consideration and some plan of operation which will be reasonable and just to both parties. Each party, therefore, if it stands strictly upon its supposed legal rights, will involve itself and the other in very large and unnecessary expense and trouble. Neither, however, is required to yield to the other. Common sense dictates that the parties should get together and meet the situation as it is, with the best and most reasonable adjustment which the situation permits. They must consider the service to be performed and the duty which each owes to the service. They have made an adjustment, mutually satisfactory. It is clearly legal, unless it involves a hidden rebate. Clearly the plaintiff cannot be required to pay the entire expense of spotting the cars, as under the circumstances it is not required in the fullest sense to do so. Neither can the defendant require payment for all it costs to perform the service, because the service is such that a part of it properly falls upon it and is done in part for its accommodation. If the defendant receives the loaded cars at the sidings, and returns the empty cars or cars reloaded with outgoing freight at the siding, it is manifestly performing a service, some of which is for the benefit of the defendant and is embraced within the contract of transportation, and such service is of great value to the plaintiff.

There is nothing before us to show that the amount agreed upon is excessive under the circumstances. The agreed rate has been filed with the Commission and acted upon. If the Commission has held that the railroad company can make no payment for such services, we disagree with it, and hold that a reasonable compensation under all the circumstances should be made. It therefore seems that until the Commission, by affirmative action, recognizes the fact that some compensation is to be made, and determines that the amount agreed upon is excessive, and in substance a rebate, the plaintiff's liability is clear.

I therefore concur in the result.

---

(89 Misc. Rep. 176)

In re BECKER.

(Supreme Court, Special Term, Nassau County. February, 1915.)

1. COURTS ⬥⇒58—CRIER—RIGHT TO MILEAGE.
    Under the express provisions of Laws 1909, c. 16 (Consol. Laws, c. 11) § 240, subd. 4, as amended by Laws 1910, c. 34, § 1 and of Laws 1909, c. 35 (Consol. Laws, c. 30) § 365, as amended by Laws 1910, c. 34, § 2, and by Laws 1911, c. 566, § 2, the court crier of the courts of record in the county of Nassau is entitled to receive, in addition to his salary as fixed by the board of supervisors, an extra sum at the rate of five cents a mile for traveling expenses in going to and returning from the place of attendance.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 201–203; Dec. Dig. ⬥⇒58.]

2. COURTS ⬥⇒58—CRIER—RIGHT TO MILEAGE—WAIVER.
    That a court crier accepted and discharged the duties of his position under an appointment by the county judge, who requested that the salary be fixed at a certain sum per annum in full for all services rendered, did not constitute a waiver of the appointee's statutory right to traveling ex-

---

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

penses, or constitute an agreement by him to perform the duties of court crier for the stated salary without traveling expenses.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 201–203; Dec. Dig. ☞58.]

3. COURTS ☞58—CRIER—TRAVELING FEES—POWERS OF SUPERVISORS.

While the board of supervisors may fix the compensation of a court crier, it can neither reduce or cancel the amount expressly fixed by law to be paid him as traveling fees, nor can it make a binding contract with the appointee to perform the duties of the position and eliminate such fees.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 201–203; Dec. Dig. ☞58.]

Application by Maximilian F. Becker for a peremptory writ of mandamus directed against Charles L. Phipps, as County Comptroller of the County of Nassau. Application granted.

Neil H. Vandewater, of Mineola, for petitioner.
Davison & Underhill, of Brooklyn, for county comptroller.

ASPINALL, J. This is an application for a peremptory writ of mandamus, made by the court crier of the county of Nassau, directed to the county comptroller of Nassau county, commanding him to sign a warrant for the payment to the said court crier of a claim which had been duly audited, allowed, and directed to be paid by the unanimous vote of the board of supervisors of the said county, which warrant was presented to the county comptroller for his signature. The claim made by the said court crier, the relator herein, is for traveling fees at the rate of five cents per mile, allowed to the court crier by subdivision 4, section 240, of the County Law, as amended by the Laws of 1910, for each mile traveled by him in going to and returning from the place of attendance at courts of record within the county. The county judge of Nassau county, under and pursuant to the power vested in him by the provisions of the Judiciary Law, as hereinafter more fully set forth, did on December 27, 1910, appoint the relator herein to the position of court crier for the courts of record in the county of Nassau. This fact was communicated to the board of supervisors of said county by the said county judge, with the request that the salary of the said court crier should be fixed at the rate of $1,200 per annum in full for all services rendered. On December 27, 1910, the said board of supervisors unanimously adopted a resolution fixing the salary of the said court crier at the rate of $1,200 per annum, to be payable monthly in the same manner as other county employés are paid. Subsequently and under a similar resolution the compensation of the said court crier was fixed at the sum of $1,300 per annum.

It is conceded that the county judge, in his request to the board of supervisors, requested that the salary of the said court crier, the relator herein, be fixed at $1,200 per annum, "in full for all services rendered," which request was before the said board and was taken fully into consideration by them at the time of fixing the amount of said salary. The claim of the relator herein is for $1,166.20, being for traveling fees from January 6, 1911, to and including the 28th day of November,

1914, for the days in which the courts of record were in session in Nassau county. A claim for this amount, duly verified, was thereafter presented to the county comptroller, claiming traveling fees at the rate of five cents per mile for going to and returning from the place of attendance as such court crier on the days when the courts of record were in session. The county comptroller entertained said claim and thereupon affixed his certificate as such official disallowing the same, and the said claim and certificate were forwarded and presented to the board of supervisors for audit. The resolution upon the audit of said claim was duly passed and adopted unanimously by the said board of supervisors, notwithstanding the objections of the county comptroller to the same. Thereupon the aforesaid claim, together with a warrant directing the county treasurer of Nassau county to pay unto the said court crier, the relator herein, the sum of $1,166.20, the amount of said claim as audited and directed to be paid, and other papers unnecessary to enumerate, were delivered to the aforesaid county comptroller, when a request and demand was made upon him to sign the warrant aforesaid; but the county comptroller has refused, and still refuses, to sign such warrant, for the reason as set forth by him that the said claim was and is illegal, as, in his opinion, the court crier's salary, as fixed by the board of supervisors as aforesaid, was in full for all services rendered by him.

[1] It is claimed by the said comptroller that the payment to the court crier of traveling fees at the rate of five cents per mile would be, in effect, additional compensation, to which he is not entitled, as he is not a per diem employé. The contention of the comptroller that the matter of mileage applies only when the court crier's compensation is fixed at a per diem rate is to my mind untenable. It might have had some application prior to the 1910 amendment, but since the amendment went into effect eliminating the per diem compensation payable to criers, and vesting in the board of supervisors the power to fix the compensation of such employés, I am satisfied that that contention is without merit. The provisions of law applicable to this controversy are as follows:

County charges: Section 240, subdivision 4, chapter 16, of the Laws of 1909, reads as follows:

"The compensation of the criers of the courts of record within the county for attendance thereat, at three dollars per day and also traveling fees, at the rate of five cents per mile, for going to and returning from the place of attendance except in the county of Queens where the crier shall receive a yearly salary of twelve hundred dollars payable monthly by the county."

And section 240, subdivision 4, chapter 34, of the Laws of 1910, provides as follows:

"The compensation of the criers of the courts of record within the county for attendance thereat, and also traveling fees, at the rate of five cents per mile, for going to and returning from the place of attendance."

. And the Judiciary Law: Section 365 of the Laws of 1909, chapter 35, provides as follows:

"The crier appointed by the county judge of each county, except Kings and Erie, to be crier for the courts of record held in his county is entitled to compensation fixed and to be paid as prescribed by law. * * * *"

And section 365 of the Laws of 1910, chapter 34, and chapter 566 of the Laws of 1911 provide as follows:

"The crier appointed by the county judge of each county, except Kings and Erie, to be crier for the courts of record held in his county is entitled to a compensation to be fixed by the board of supervisors and to be paid as prescribed by law. * * * "

After a careful reading of these sections of the County and Judiciary Laws, applicable hereto, and the authorities, I am convinced that it was the intention of the Legislature that the traveling fees were intended to be in addition to the compensation to be fixed by the board of supervisors, not as additional compensation, but to cover the expenses of traveling. It will be noted that the statute provides for compensation to be paid to court criers *and* also traveling fees. It is in the conjunctive, and, I am satisfied, means compensation and a sum additional to cover traveling expenses. It is claimed by the county comptroller, which statement is verified by members of the board of supervisors in affidavits submitted by them, that it was understood by them, at the time of fixing the said court crier's compensation, that said compensation was to be in full for all services rendered, and that the said court crier was not to be paid any sum for traveling expenses. It is conceded that the request of the county judge, in notifying the board of supervisors of the appointment of the said Becker as court crier and that the said board fix his compensation at the rate of $1,200 per annum "in full for all services rendered," was before them. But even this statement, appearing in the request made by the county judge, to wit, "in full for all services rendered," could not deprive the relator of his right to traveling fees as fixed by the statute. The said board of supervisors had full power to fix the amount of the compensation, and when they did so it became as binding as though it had been fixed by the Legislature itself, and I am also satisfied that even they did not have the power or authority to alter, vary, or eliminate the provisions of the County Law as to the traveling fees which were directed to be paid to the court crier, and that the said court crier, the relator herein, is as much entitled to the said fees as if a provision for them had been incorporated in the resolution adopted by the said board in fixing the compensation; in other words, that the statute providing for traveling fees acted automatically and attached itself to the position as soon as it had been filled by appointment thereto, and that no further act was necessary to confer upon the incumbent the right to the traveling fees as aforesaid.

If it should be held that the board of supervisors had power to overrule the provisions of the statute as to the payment of traveling fees, it would in effect, to my mind, be countenancing a usurpation by them of the functions of the Legislature, which, of course, could not be permitted. The board of supervisors had no power whatever to change the effect of the statute or to overrule its provisions as to the traveling fees to be allowed. Their power under the statute was exhausted when they fixed the compensation of the court crier, and the statute as to the fees for traveling expenses had acted automat-

ically and conferred upon the said court crier, the relator herein, the right thereto, the said statute being, in my opinion, mandatory. The County and Judiciary Laws have both been amended, as appears above, but they have never been amended in so far as the provision for traveling fees to be paid to the court crier is concerned, and this provision remains unaffected and is now in full force and effect. The provisions of the said laws are in no sense ambiguous, nor are they in conflict; on the contrary, they are, to my mind, clearly in harmony with and supplemental to each other. It has been held that there is no contract between the officer and the state or municipality by force of which salary is payable. That applies to him as an incident of his office, and so long as he holds it, and, when improperly withheld, he may sue for it and recover the full amount, not by force of any contract, but because the law attaches it to the office, and I believe that this statement of the law applies equally to the right to fees, as provided for by statute. See Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, 55 Am. Rep. 835.

[2] I am satisfied that the acceptance and discharge of the duties of the office of court crier by the relator herein, under the said appointment, was not a waiver of the statutory provision as to traveling fees, and did not constitute an agreement by him to perform the duties of the office for the compensation named, without traveling fees, for the reasons heretofore stated.

[3] The board having the power to fix the compensation of the court crier cannot reduce or cancel the amount expressly fixed by law to be paid such official as traveling fees or make a binding contract with the appointee to perform the duties of the office and to eliminate the fees expressly provided for by the statute. See People ex rel. Satterlee v. Board of Police, 75 N. Y. 38, and also Kehn v. State of New York, 93 N. Y. 291. I am convinced that the law contemplates that the court crier shall receive the salary fixed by the board of supervisors as compensation, and in addition thereto an extra sum, at the rate of five cents per mile, for traveling expenses for going to and returning from the place of attendance, the latter amount not by any way of additional compensation, but for traveling fees, as provided for by the statute. I am also satisfied that the said county comptroller had no discretion to exercise in this matter, and that he should have signed the said warrant directing that the amount involved herein be paid to the court crier, the relator herein. The application for a peremptory writ of mandamus is hereby granted.

Application granted.